Sheehan & Associates, P.C.
Spencer Sheehan
60 Cuttermill Rd Ste 409
Great Neck, NY 11021-3104
Telephone:  (516) 268-7080
spencer@spencersheehan.com

United States District Court
Southern District of New York                    7:20-cv-10273

| | |
|---|---|
| John Salony, individually and on behalf of all others similarly situated,<br><br>                              Plaintiff,<br><br>            - against -<br><br>VMG Partners, LLC,<br><br>                              Defendant | Class Action Complaint |

Plaintiff by attorneys alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1.     VMG Partners, LLC ("defendant") manufactures, distributes, markets, labels and sells PopChips Ridges – Cheddar & Sour Cream ("Product") to consumers from retail and online stores in packaging of various sizes.

2.     The Product makes representations with respect to its "primary recognizable flavor(s)," cheddar cheese and sour cream, through the wedge of cheddar and bowl of sour cream, the words "Cheddar & Sour Cream" and the orange color pattern on the label. *See* 21 C.F.R. § 101.22(i).

3.      Consumers expect the designation of a food's flavor to tell them information about the source of the flavor, such as (1) how much is from the named flavor, i.e., cheddar cheese and sour cream, (2) does the product contain flavor *from* the named flavor, i.e., cheddar flavor, (3) does the named flavor come from natural sources other than the food ingredient, i.e., cheddar flavor from swiss cheese and (4) does the flavor come from artificial, synthetic sources, made in an artificial process, i.e., cheddar flavor derived from petroleum chemicals. 21 C.F.R. § 101.22(i).

4.      "The rule [21 C.F.R. § 101.22(i)] is premised on the simple notion that consumers

value 'the real thing' versus a close substitute and should be able to rely on the label to readily distinguish between the two. This consumer protection objective is relevant to taste claims conveyed in advertising as well."[1]

5.      These flavor regulations have established custom and practice so that consumers' experience primed them to infer from a product's labeling whether a flavor was entirely from the characterizing ingredients or not.

6.      Most foods contain disclosures such as "naturally flavored," "other natural flavors" or "artificially flavored."

7.      The absence of these terms causes consumers to infer the food has a sufficient amount of the characterizing ingredients to flavor the food. 21 C.F.R. § 101.22(i)(1).

8.      The Product's front label contains no flavor qualifications, which causes consumers to expect all the flavor comes from cheddar cheese and sour cream.

9.      This representation is misleading because the cheddar and sour cream flavor does not come only from cheddar cheese and sour cream and has less (or none) of these ingredients than expected by consumers.

10.     Consumers prefer foods that are flavored by actual ingredients, such as cheddar cheese and sour cream, as opposed to cheddar and sour cream flavor.

11.     Even "natural cheddar" and "natural sour cream" flavors are the distilled and extracted flavor components of the respective foods and are highly processed in laboratories with complex methods and contain numerous additives and enhancers.

12.     Consumers are seeking products which obtain their flavor from their characterizing food ingredients, i.e., strawberry shortcake with strawberries or natural strawberry flavor from

---

[1] Steven Steinborn, Hogan & Hartson LLP, Regulations: Making Taste Claims, PreparedFoods.com, August 11, 2006.

strawberries as opposed to strawberry flavor synthesized from cherries.[2]

13.    The Product's representations that it is flavored only by cheddar cheese and sour cream is misleading.

14.    Though the Product contains *some* cheddar cheese, it also contains added cheddar cheese flavor, indicated by the listing of "Natural Flavors."

**INGREDIENTS:** DRIED POTATO, YELLOW CORN (DEGERMED), SUNFLOWER AND/OR SAFFLOWER OIL, SEASONING (WHEY POWDER, BUTTERMILK POWDER, CORN MALTODEXTRIN, SALT, DRIED BUTTER [CREAM, SALT], CHEDDAR CHEESE [MILK, CULTURES, SALT, ENZYMES], AUTOLYZED YEAST EXTRACT, ONION POWDER, NONFAT DRY MILK, NATURAL FLAVORS, ANNATTO [COLOR], GARLIC POWDER, CITRIC ACID, DRIED MILKFAT, PAPRIKA OLEORESIN [COLOR], TURMERIC [COLOR]), RICE FLOUR, POTATO STARCH.

**INGREDIENTS:** DRIED POTATO, YELLOW CORN (DEGERMED), SUNFLOWER AND/OR SAFFLOWER OIL, SEASONING (WHEY POWDER, BUTTERMILK POWDER, CORN MALTODEXTRIN, SALT, DRIED BUTTER [CREAM, SALT], CHEDDAR CHEESE [MILK, CULTURES, SALT, ENZYMES], AUTOLYZED YEAST EXTRACT, ONION POWDER, NONFAT DRY MILK, NATURAL FLAVORS, ANNATTO [COLOR], GARLIC POWDER, CITRIC ACID, DRIED MILKFAT, PAPRIKA OLEORESIN [COLOR], TURMERIC [COLOR]), RICE FLOUR, AND POTATO STARCH.

15.    Based on analysis of the Product, the "Natural Flavors" contains numerous cheddar aroma compounds such as acetic, butyric, caproic, and caprylic acids.

16.    These flavors are added because the amount of cheddar cheese in the Product is insufficient to independently provide a cheddar taste of the food.

---

[2] David Andrews, Synthetic ingredients in Natural Flavors and Natural Flavors in Artificial flavors, Environmental Working Group (EWG).

17.    The front label is required to disclose the added cheddar flavoring, with the word "cheddar" preceded by the word "natural," followed by the word "flavored," i.e., "natural cheddar flavored" or "cheddar flavored." 21 C.F.R. § 101.22(i)(1)(i).

18.    The Product also contains annatto and turmeric, orange food colorings, which gives consumers the incorrect impression that the Product contains *more* cheddar than it does.

19.    The front label also fails to disclose the Product contains no real sour cream, because "sour cream" and its components of "cultured milk" and/or "cultured cream" are not listed on the ingredient list.



**INGREDIENTS:** DRIED POTATO, YELLOW CORN (DEGERMED), SUNFLOWER AND/OR SAFFLOWER OIL, SEASONING (WHEY POWDER, BUTTERMILK POWDER, CORN MALTODEXTRIN, SALT, DRIED BUTTER [CREAM, SALT], CHEDDAR CHEESE [MILK, CULTURES, SALT, ENZYMES], AUTOLYZED YEAST EXTRACT, ONION POWDER, NONFAT DRY MILK, NATURAL FLAVORS, ANNATTO [COLOR], GARLIC POWDER, CITRIC ACID, DRIED MILKFAT, PAPRIKA OLEORESIN [COLOR], TURMERIC [COLOR]), RICE FLOUR, AND POTATO STARCH.

20.    Sour cream is a cultured dairy product made by adding lactic acid bacteria to pasteurized milk or cream.

21.    This process restores many of the beneficial bacteria that are lost during

pasteurization and imparts a pleasant tangy flavor.

22.    Consumers want real sour cream because even when consumed in small amounts, it contributes to beneficial health effects.

23.    Sour cream helps to establish and maintain beneficial intestinal bacterial flora and reduce lactose intolerance.

24.    Sour cream has high mineral content, particularly phosphorus and calcium.

25.    Phosphorous helps maintain the health of teeth and bones.

26.    Calcium assists the heart muscles by providing pressure in the arteries.

27.    When calcium levels drop, calcitriol is released, causing contraction of arteries by raising the blood pressure.

28.    The vitamin B12 in sour cream helps preserve nerve cells and maintain red blood cells.

29.    Vitamin B2 also promotes growth and development of body tissues and organs such as eyes, skin, mucous membranes and the immune system.

30.    The vitamin A in sour cream helps to promote eye health by increasing moisture and adjusting to changes in ambient light.

31.    Vitamin A also increases the body's immunity in fighting against infections due to its effect on white blood cells.

32.    Based on analysis of the Product, the "Natural Flavors" contains "sour cream flavor."

33.    This is not sour cream as consumers understand and expect it, but is "the essential oil, oleoresin, essence or extractive, protein hydrolysate, distillate, or any product of roasting, heating or enzymolysis, which contains the flavoring constituents derived from" sour cream. *See* 21 C.F.R. § 101.22(a)(3).

34.    The "Natural Flavors" contains key sour cream flavor compounds, including 2,3-butanedione, acetic acid, butyric acid, octanal, 2-methyl-3-furanthiol, 1-octene-3-one, and acetaldehyde.

35.    Defendant's branding, marketing and packaging of the Product is designed to – and does – deceive, mislead, and defraud plaintiff and consumers.

36.    The amount and presence of cheddar cheese and sour cream is material to plaintiff and consumers.

37.    Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

38.    The value of the Product that plaintiff purchased and consumed was materially less than its value as represented by defendant.

39.    Had plaintiff and class members known the truth, they would not have bought the Product or would have paid less for it.

40.    As a result of the false and misleading labeling, the Product is an sold at a premium price, approximately no less than $2.29 per 5 OZ compared to other similar products represented in a non-misleading way, and higher than the price of the Product if it were represented in a non-misleading way.

<u>Jurisdiction and Venue</u>

41.    Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2)

42.    Under CAFA, district courts have "original federal jurisdiction over class actions involving (1) an aggregate amount in controversy of at least $5,000,000; and (2) minimal diversity[.]" *Gold v. New York Life Ins. Co.*, 730 F.3d 137, 141 (2d Cir. 2013).

43.    Plaintiff John Salony is a citizen of New York.

44.    Defendant VMG Partners, LLC is a Delaware limited liability company with a principal place of business in San Francisco, San Francisco County, California and at least one of its members is not a citizen of New York.

45.    "Minimal diversity" exists because plaintiff John Salony and at least one member of defendant are citizens of different states.

46.    Upon information and belief, sales of the Product exceed $5 million during the applicable statutes of limitations, exclusive of interest and costs.

47.    Venue is proper a substantial part of the events or omissions giving rise to the claim occurred in this District.

48.    Plaintiff purchased the Product on numerous occasions including but not limited to between November and December 2020, at stores including Price Chopper, 115 Temple Hill Rd, New Windsor, NY 12553 (Vails Gate).

49.    Plaintiff bought the Product at or exceeding the above-referenced price because he liked the product for its intended use and relied upon its front label representations.

50.    Plaintiff was deceived by and relied upon the Product's deceptive labeling and marketing.

51.    Plaintiff would not have purchased the Product in the absence of Defendant's misrepresentations and omissions or would have paid less for it.

52.    Plaintiff intends to, seeks to, and will purchase the Product again when he can do so with the assurance that Product's labels are consistent with the Product's components.

<u>Class Allegations</u>

53.    The class will consist of all purchasers of the Product who reside in New York during

the applicable statutes of limitations.

54.    Plaintiff seeks class-wide injunctive relief based on Rule 23(b) in addition to a monetary relief class.

55.    Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiff and class members are entitled to damages.

56.    Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

57.    Plaintiff is an adequate representative because his interests do not conflict with other members.

58.    No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

59.    Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

60.    Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

61.    Plaintiff seeks class-wide injunctive relief because the practices continue.

<u>New York General Business Law ("GBL") §§ 349 & 350</u>
<u>(Consumer Protection Statutes)</u>

62.    Plaintiff incorporates by reference all preceding paragraphs.

63.    Plaintiff and class members desired to purchase and consume products which were as described and marketed by defendant and expected by reasonable consumers.

64.    Defendant's acts and omissions are not unique to the parties and have a broader impact on the public.

65.    Defendant misrepresented the substantive, quantitative, qualitative, compositional

and/or nutritional attributes of the Product.

66.    The Product's purported amount of cheddar cheese and sour cream have a material bearing on price and consumer acceptance of the Product.

67.    Plaintiff relied on the statements, omissions and representations of defendant, and defendant knew or should have known the falsity of same.

68.    Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Negligent Misrepresentation</u>

69.    Plaintiff incorporates by reference all preceding paragraphs.

70.    Defendant had a duty to disclose the amount and presence of the characterizing ingredients on the front label in the Product's flavoring designation.

71.    This duty is based on defendant's position as an entity which has held itself out as having special knowledge and experience in the production, service and/or sale of the product type.

72.    The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in defendant, a well-known and respected brand or entity in this sector.

73.    Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, the purchase of the Product.

74.    Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Breaches of Express Warranty, Implied Warranty of Merchantability and
<u>Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*</u>

75.    Plaintiff incorporates by reference all preceding paragraphs.

76.    The Product was manufactured, labeled and sold by defendant or at its express

directions and instructions, and warranted to plaintiff and class members that it possessed substantive, quality, nutritional, and/or compositional attributes it did not.

77.    Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

78.    This duty is based, in part, on defendant's position as one of the most recognized companies in the nation in this sector.

79.    Plaintiff provided or will provide notice to defendant, its agents, representatives, and their employees.

80.    Defendant received notice and should have been aware of these misrepresentations due to numerous complaints by consumers to its main office over the past several years regarding the Product, of the type described here.

81.    The Product did not conform to its affirmations of fact and promises due to defendant's actions and were not merchantable because plaintiffs expected a product that was described by Defendant.

82.    Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Fraud</u>

83.    Plaintiff incorporates by reference all preceding paragraphs.

84.    Defendant's fraudulent intent is evinced by its failure to accurately represent the Product on the packaging, when it knew its statements were neither true nor accurate and misled consumers.

85.    Defendant was motivated by increasing its market share against competitor products.

86.    Plaintiff and class members would not have purchased the Product or paid as much

if the true facts had been known, suffering damages.

<u>Unjust Enrichment</u>

87.    Plaintiff incorporates by reference all preceding paragraphs.

88.    Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

  **WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying plaintiff as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4. Awarding monetary damages, statutory damages under the GBL and interest pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated:   December 6, 2020

                                                            Respectfully submitted,

                                                            Sheehan & Associates, P.C.

/s/Spencer Sheehan
Spencer Sheehan
60 Cuttermill Rd Ste 409
Great Neck NY 11021-3104
Tel: (516) 268-7080
Fax: (516) 234-7800
*spencer@spencersheehan.com*
E.D.N.Y. # SS-8533
S.D.N.Y. # SS-2056

7:20-cv-10273
United States District Court
Southern District of New York

John Salony, individually and on behalf of all others similarly situated,

                Plaintiff,

      - against -

VMG Partners, LLC,

                Defendant

---

## Class Action Complaint

---

```
        Sheehan & Associates, P.C.
         60 Cuttermill Rd Ste 409
         Great Neck NY 11021-3104
            Tel: (516) 268-7080
            Fax: (516) 234-7800
```

---

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated:  December 6, 2020

                    /s/ Spencer Sheehan
                    Spencer Sheehan